**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TAMARA SUE HESKETT,**

        **Plaintiff,**

  v.                                       **Civil Action 2:20-cv-3171
Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF
SOCIAL SECURITY,**

        **Defendant.**

## OPINION AND ORDER

Plaintiff, Tamara Sue Heskett, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). The parties in this matter consented to the Undersigned pursuant to 28 U.S.C. § 636(c). (Docs. 7, 8). For the reasons set forth below, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

**I.     BACKGROUND**

Plaintiff filed her application for DIB on January 10, 2017, alleging that she was disabled beginning August 1, 2014, due to back pain, chronic shoulder pain, anxiety, depression, high blood pressure, and hypertension. (Tr. 183-84, 195). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a video hearing on February 20, 2019. (Tr. 27–58). The ALJ denied benefits in a written decision on March 4, 2019. (Tr. 7–26). That became the final decision of the Commissioner when the Appeals Council denied review. (Tr. 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on June 22, 2020 (Doc. 1), and the Commissioner filed the administrative record on November 9, 2020 (Doc. 13). Plaintiff filed her Statement of Errors (Doc. 14) on December 22, 2020, and Defendant filed an Opposition (Doc. 17) on February 9, 2021. Plaintiff filed her Reply on February 23, 2021. (Doc. 19). Thus, this matter is now ripe for consideration.

### A. Relevant Hearing Testimony

The ALJ summarized the testimony from Plaintiff's hearing:

> The [Plaintiff] alleged that she is disabled because she has trouble with her back, shoulder, and hip in addition to being fearful of going into public. The [Plaintiff] testified that her back had been bothering her for eight years despite using muscle relaxers. The [Plaintiff] alleged that she could only stand for about 15 minutes without needing to sit or lay on the floor. The [Plaintiff] alleged that her anxiety and depression prevents her from going to the grocery store, the movie theater, and the zoo.

(Tr. 17, citation to testimony omitted).

> The [Plaintiff] testified that she has experienced back pain for 8 years; however, she has never been recommended for surgery and has received conservative treatment, with muscle relaxers. The [Plaintiff]'s hip pain has additionally only occurred for approximately 5 months.

(Tr. 18, citation to testimony omitted).

### B. Relevant Medical Evidence

The ALJ summarized the relevant medical records:

> Turning first to the [Plaintiff]'s physical impairments, the [Plaintiff] has degenerative disc disease of the lumbar spine, degenerative joint disease of the right hip, and degenerative joint disease of the left knee. The [Plaintiff]'s degenerative disc disease of the lumbar spine is documented on radiological images as "mild multilevel degenerative disc disease" (4F/77, 81). Physical examinations reveal that the [Plaintiff] had a normal range of motion on medical records even when reporting back pain (4F/27; 30). The consultative physical examination found that the [Plaintiff] has normal dorsolumbular spine extension, right lateral flexion, and left lateral flexion with 70/90 flexion (3F/9). Physical examination of the [Plaintiff]'s hip found normal flexion, extension, abduction, adduction, internal rotation, and external rotation (3F/10). Radiological images of the right hip revealed

> no evidence of acute fracture or dislocation with mild degenerative joint disease (3F/11). Physical examination of the [Plaintiff]'s knee found normal flexion and extension (3F/10). Radiological images of the [Plaintiff]'s left knee found no fracture, no dislocation, and mild degenerative joint disease (3F/12). The [Plaintiff] ambulates with a normal gait (2F/4; 3F/3; 8F/4) and has not reported gait problems to providers (specifically (4F/8, 65) and generally (4F/23, 26 30, 50, 69, 72)). The undersigned also notes that the [Plaintiff] does not report symptoms of pain in her back, knee, or hip continuously after the initial allegation (4F; 5F; 6F; 7F).
> [ ] Collectively, this supports the above physical residual functional capacity.
>
> Turning next to the [Plaintiff] psychological impairments, the [Plaintiff] has anxiety disorder, depressive disorder. The [Plaintiff]'s medical records reveal that the she quit her last job in 2014 because her husband had a good job and her anxiety was not bad at that time (5F/8-9). Furthermore, the [Plaintiff] reported that she missed working and being more active, but does not want to leave her house due to the "cruel people in the world" (5F/8-9). The [Plaintiff] reported that her anxiety was worsening due to her husband's kids breaking into her house and robbing her numerous times (4F/37). This additionally leads to anxiety and fear about leaving her home and her husband's kids finding out that that her home is unoccupied (4F/37). The [Plaintiff] reports that she feels safer at her house and makes sure that the doors are locked throughout the night (4F/37). The [Plaintiff] reportedly manages her stress by isolating herself, spending time with her kids and grandkids, doing crafts, and helping kids with projects (4F/9, 39). The [Plaintiff] has never been hospitalized for psychiatric conditions and has never received outpatient mental health services, other than the psychotropic medications prescribed by her primary care physician and seeing a social worker (2F/4; 5F). Additionally, the [Plaintiff] reported she dressed up with her husband as Mrs. Claus and Santa while visiting four of their families' houses on a Saturday, and then when to two of her husband's kid's houses on Monday (5F/13). Collectively, this supports the above psychological limitations.

(Tr. 17–18).

### C. The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirement through December 31, 2019, and has not engaged in substantial gainful employment since August 1, 2014, the alleged onset date. (Tr. 12). The ALJ determined that Plaintiff suffered from the following severe impairments: anxiety disorder, depressive disorder, degenerative disc disease of the lumbar spine, degenerative joint disease of the right hip, and degenerative joint disease of the left knee. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination,

meet or medically equals a listed impairment. (Tr. 13).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ found that:

> After careful consideration of the entire record, the undersigned finds that the [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except she can lift and carry 50 pounds occasionally and 25 pounds frequently, sit up to 6 hours in a day, stand and walk up to 6 hours in a day. The [Plaintiff] can push and pull as much as she can lift and carry. She can climb ramps and stairs frequently, climb ladders, ropes, and scaffolds occasionally, balance frequently, stoop frequently, kneel frequently, crouch occasionally, and crawl occasionally. She can work in unprotected heights occasionally and with moving mechanical parts occasionally. The [Plaintiff] can perform simple work. She can interact with supervisors occasionally, coworkers occasionally, but never interact with the public, except for incidental contact. The [Plaintiff] can work in a low stress environment defined as occasional changes in a routine work setting and no fast-paced production or strict time quota requirements.

(Tr. 16).

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence and other evidence in the record for the reasons explained in this decision." (Tr. 17).

As for the relevant opinion evidence, the ALJ found,

> As for the opinion evidence, the undersigned affords little weight to the opinion of Ellen J. Offutt, M.D., consultative medical examiner (3F/10). Dr. Offutt opined that the [Plaintiff] would have moderate to severe impairments to her ability to bend, stoop, lift, walk, crawl, squat, carry, travel, push, and pull (3F/5). Dr. Offutt's opinion is not well supported as her own findings on physical examination as well as the radiological images reveal a lesser degree of limitations (3F). The undersigned also notes that these limitations are vague and unhelpful in articulating a residual functional capacity in vocationally relevant terminology. Dr. Offutt's opinion is also inconsistent with the objective medical record. Specifically, the [Plaintiff]'s medical records reveal inconsistently reported subjective pain to her back, hip, and knee (4F; 5F; 6F; 7F) that do not produce limitations to her gait (2F/4; 3F/3; 8F/4) and do not inhibit her range of motion on physical examination aside from her dorsolumbular spine being limited to 70/90 flexion (3F).

> The undersigned affords some weight to the opinion of James N. Spindler, M.S. consultative psychological examiner (2F). Mr. Spindler opined that the [Plaintiff]

has an adequate knowledge for most aspects of daily living, is capable of understanding, remembering, and carrying out instructions in most job settings, would require acclimation to a new work setting, has no problem getting along with others, and can handle stress moderately well once she adapts to a new work setting (2F). Mr. Spindler supported his opinion with reference to psychometric testing and the [Plaintiff]'s interview; however, his opinion contained vague limitations that are unhelpful in formulating a residual functional capacity utilizing vocationally relevant terminology. Mr. Spindler was unable to review the [Plaintiff]'s treatment records (2F; 4F; 5F; 6F; 7F). The undersigned notes that this opinion is generally less restrictive than the undersigned's residual functional capacity and therefore supports finding that the [Plaintiff] is not disabled.

The undersigned affords little weight to the opinions of the State agency medical consultants at the initial level (1A; 2A) and some weight to the opinions of Gerald Klyop, M.D, State agency medical consultant at the reconsideration level (4A). At the initial level, the first consultant, Steve E. McKee, M.D., opined that the [Plaintiff] was limited to light exertional activity except she can frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds, unlimitedly balance, frequently stoop, unlimitedly kneel, unlimitedly crouch, and frequently crawl (1A). The second consultant, Leigh Thomas, M.D., opined that there were no severe physical impairments (2A). Both of these consultants failed to support their opinions adequately with an articulate explanation or summary of the objective medical evidence. Furthermore, the radiological imaging and physical examination findings are inconsistent with limiting the [Plaintiff] to light level exertional activity. Specifically, mild degenerative joint disease of the right hip (3F/11), mild degenerative joint disease of the left knee (3F/12), and mild multilevel degenerative disc disease of the lumbar spine (4F/77, 81) do not produce limitations that warrant a light exertional level. This is further reinforced by the consultative physical examination finding no limitations with the [Plaintiff]'s hips or knees and only a 70/90 flexion finding related to the dorsolumbular spine (3F). Gerald Klyop, M.D., State agency medical consultant at the reconsideration level, opined that the [Plaintiff] was capable of medium exertional activity except she could frequently climb ramps and stairs, frequently climb ladders, ropes, and scaffolds, unlimitedly balance, frequently stoop, frequently kneel, frequently crouch, and frequently crawl. This opinion is supported by the medical record, radiological imagery, and the consultative examination (3F-8F). The undersigned affords this opinion only some weight because it is for the period after April of 2017; however, there is insufficient evidence to demonstrate that the [Plaintiff] was at a lower exertional level prior to April of 2017 (4A). Furthermore, the record demonstrates that the [Plaintiff] requires more limitations to postural activities due to the combined impairments (3F-8F).

The undersigned affords some weight to the opinions of the Kathleen Malloy, Ph.D., State agency psychological consultant at the initial level (1A; 2A) and Robyn Murry-Hoffman, Ph.D., State agency psychological consultant at the reconsideration level (4A). These consultants opined that the [Plaintiff]'s

5

    psychological impairments allowed her to carry out 1-4 step tasks that do not require a fast pace or high production quota, to interact superficially with coworkers and supervisors with limited interaction with the general public, and to adapt to a setting in which duties are routine and predictable. The consultants supported their opinions with adequate explanation and summary of the [Plaintiff]'s medical records. Furthermore, their opinions are largely consistent with the [Plaintiff]'s medical records and findings on consultative psychological examination (2F; 4F; 5F; 6F; 7F; 8F).

(Tr. 18–19).

Relying on the vocational expert's testimony, the ALJ concluded that Plaintiff is unable to perform her past relevant work as a cashier, stocker, or material handler, but she could perform other medium exertional jobs that exist in significant numbers in the national economy such as a dishwasher, groundskeeper or laundry worker. (Tr. 20–21). He therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act, at any time from her alleged onset date of August 1, 2014, through the date of his decision. (Tr. 21).

## II.    STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538

(6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III. DISCUSSION

Plaintiff first argues that the ALJ's mental residual functional capacity determination is not supported by substantial evidence because he failed to properly weigh the opinion of consulting examiner, James N. Spindler, M.S. (Doc. 14 at 6–13). Plaintiff also argues that the ALJ's physical RFC determination is not supported by substantial evidence because the ALJ failed to properly weigh the opinions of consulting examiner, Ellen J. Offutt, M.D. and State agency consultant, Steve E. McKee, M.D. (*Id.* at 13–19).

The RFC "circumscribes 'the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from—though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities.'" *Johnson v. Comm'r of Soc. Sec.*, No. 08-CV-14363, 2010 WL 520725, at *7 (E.D. Mich. Feb. 8, 2010) (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002)). This means that "'[a] claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.'" *Johnson*, 2010 WL 520725, at *7 (quoting *Young v. Comm'r of Soc. Sec.*, 2004 WL 1765480, at *5 (E.D. Mich. 2004)). "'The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Johnson*, 2010 WL 520725, at *7 (alteration in original) (quoting *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007)). "'Put another way, the existence of a severe impairment says nothing as to its limiting effects.'" *Hicks v. Berryhill*, No. 3:17-CV-176-HBG, 2018 WL 2074181, at *4 (E.D. Tenn. May 3, 2018) (quoting

7

*Simpson v. Comm'r of Soc. Sec.*, No. 1:13-CV- 640, 2014 WL 3845951, at *9 (S.D. Ohio Aug. 5, 2014)). Importantly, Plaintiff "bears the burden to show that an impairment invokes work-related limitations." *Hicks*, 2018 WL 2074181, at *4 (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

    A.    **Physical RFC**

Plaintiff argues that the physical RFC is fatally flawed because the ALJ improperly weighed the opinion of one-time consultative examiner, Ellen Offut, M.D., and state agency doctor, Steve McKee, M.D. (Doc. 14 at 13–18). Defendant responds that the medical opinions and record evidence were weighed properly.

There is no question that the ALJ reviewed the relevant medical opinions in this case. In doing so, he ultimately gave the most weight—although only "some" weight—to state agency doctor, Gerald Klyop, M.D. (Tr. 19). In July 2017, at the reconsideration level, Dr. Klyop, determined that Plaintiff could perform a range of medium work despite her impairments (Tr. 98–100). The ALJ determined that Dr. Klyop's opinion was supported by the medical record, including the radiological imaging and consultative examination. (Tr. 19 (generally relying on 262–439)). The ALJ generally adopted it but determined that Plaintiff had more restrictive postural activities due to her combined impairments. (Tr. 19 (generally relying on 262–439)). In addition, the ALJ considered the objective medical evidence when evaluating the medical opinions and formulating the residual functional capacity. And records show that Plaintiff had mild degenerative joint disease of the right hip (Tr. 272), mild degenerative joint disease of the left knee (Tr. 273), and mild multilevel degenerative disc disease of the lumbar spine (Tr. 350, 354). Plaintiff had a normal gait (Tr. 257, 264, 338, 435) and normal muscle strength throughout her

8

extremities with no atrophy (Tr. 265, 268). She also had mostly normal range of motion (Tr. 270, 296, 300, 303, 320, 324).

There is no error in an ALJ's decision to rely on a non-examining doctor's opinion. *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). The ALJ noted that the opinion was for the time period after April 2017 (years after the alleged onset date), and that there was insufficient evidence to demonstrate that Plaintiff had a lower exertional level prior to April 2017. (Tr. 19). Of note, the ALJ also considered that Plaintiff conservatively treated with medication and never sought or required surgical intervention or more invasive pain management such as a nerve root block. (Tr. 20, 254–439). The ALJ also relied upon the fact that Plaintiff testified that her hip pain occurred only for about five months (Tr. 18, 36). Considering the aforementioned evidence, including the state agency assessment for medium work, the mild radiological imaging, and the normal objective findings, the ALJ's residual functional capacity was supported by substantial evidence.

Plaintiff counters that the ALJ should have relied more heavily on the opinions of Drs. Offutt and McKee. In July 2017, Dr. Offutt conducted a one-time physical examination of Plaintiff (Tr. 262–73). Dr. Offutt opined that Plaintiff would have moderate-to-severe impairments to her ability to bend, stoop, lift, walk, crawl, squat, carry, travel, push, and pull. (Tr. 266). Upon review, the ALJ explained that Dr. Offutt's opinion was not well supported because her own physical examination findings, as well as the radiological images, revealed a lesser degree of limitations (Tr. 18 (relying on Tr. 262–73)). The ALJ also noted that Dr. Offutt's limitations were vague and unhelpful in articulating a residual functional capacity in vocationally relevant terminology. It was within the ALJ's discretion to make this determination. *See Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 476 (6th Cir. 2008) (finding that an ALJ properly rejected portion of an opinion as vague).

9

The ALJ further noted that Dr. Offutt's opinion was inconsistent with the objective medical record. (Tr. 18). For instance, the record showed that Plaintiff inconsistently reported subjective pain of her back, hip, and knee. (Tr. 18, 274–439). The pain she did report did not produce limitations to her gait (Tr. 257, 264, 435), and did not inhibit her range of motion on physical examination aside from some decreased dorsolumbar spinal flexion at 70/90 (Tr. 18, 270). This evaluation was appropriate, and the ALJ provided good reasons for giving little weight to Dr. Offutt's opinion.

Further, the ALJ reasonably evaluated the opinion of the state agency physician, Dr. McKee. (Tr. 19). In February 2017, at the initial level, Dr. McKee opined that Plaintiff was limited to light exertional work that involved frequent stooping, crawling, and climbing of ramps and stairs; occasional climbing of ladders, ropes, and scaffolds; and unlimited balancing, kneeling, and crouching. (Tr. 19, 67–69). The ALJ found that Dr. McKee, as well as another state agency doctor who found no severe physical impairments (Tr. 80), failed to support their opinions with an articulate explanation or summary of the objective medical evidence. (Tr. 19). The ALJ explained further that the radiological imaging and physical examination findings were inconsistent with limiting Plaintiff to light work. (*Id.*). Thus, the ALJ followed the appropriate regulations in giving Drs. McKee's and Offutt's opinions little weight.

At base, Plaintiff disagrees with the ALJ's conclusions, but it was within the ALJ's zone of choice, and the ALJ did not err in fashioning Plaintiff's physical RFC.

**B.     Mental RFC**

Plaintiff also argues that the ALJ improperly weighed the opinion of James Spindler, M.S., leading to a flawed mental RFC. (Doc. 14 at 6–13). The Court disagrees.

10

As a consultative examiner, Mr. Spindler saw Plaintiff one time, in February 2017. Afterwards, he opined, in relevant part, that Plaintiff had an adequate knowledge for most aspects of daily living; could understand, remember, and carry out instructions in most job settings, would require acclimation to a new work setting, had no problem getting along with others; and could handle stress moderately well once she adapted to a new work setting. (Tr. 254–61).

The ALJ gave Mr. Spindler's opinion some weight, and provided several reasons for doing so. (Tr. 19). First, the ALJ noted that while Mr. Spindler referenced psychometric testing and Plaintiff's interview to support his opinion, the opinion contained undefined limitations that were unhelpful in figuring out what Plaintiff could do in a work setting. (*Id*.). For instance, Mr. Spindler did not indicate the level of instruction Plaintiff could understand, remember, or carry out, such as detailed or simple. He also did not specify the amount of time needed to adapt to a new environment or the type of adaptation that would be needed (i.e., learning the job, socializing). As such, the ALJ appropriately discounted Mr. Spindler's opinion as vague and only somewhat useful. *See Gaskin*, 280 F. App'x at 476.

In addition, the ALJ properly noted that Mr. Spindler saw Plaintiff only one time and did not review all of Plaintiff's treatment records. (Tr. 19 (citing Tr. 255)). For instance, a review of the entire record shows that Plaintiff quit her last job not because of disability but because her husband had a "good job." (Tr. 18 (relying on Tr. 362)). The records also show that Plaintiff had never been hospitalized for psychiatric conditions and had received only minimal treatment—medications prescribed by her primary care physician and visiting a social worker. (Tr. 18 (relying on 257, 355–88)).

On the other side of the scale, two state agency psychologists concluded that Plaintiff could carry out one-to-four step tasks that do not require a fast pace or high production quota; could

interact superficially with coworkers and supervisors with limited interaction with the general public; and could adapt to a setting in which duties are routine and predictable. (Tr. 19, 59–87, 89–104). The ALJ found that the state agency psychologists' opinions were largely consistent with the medical records. (Tr. 19 (relying on Tr. 254–439)). So the state agency opinions were consistent with the residual functional capacity finding and served as substantial evidence supporting the ALJ's decision. (Tr. 16).

Further, as the ALJ expressly stated, Mr. Spindler's opinion is generally less restrictive than the ALJ's residual functional capacity finding. (Tr. 19). Thus, even if the ALJ had deferred to Mr. Spindler's opinion, the ultimate result would have been the same—Plaintiff did not qualify for disability. *Gaskin*, 280 F. App'x at 476; *see Shkabari v. Gonzalez*, 427 F.3d 324, 328 (6th Cir. 2005) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

In sum, the ALJ properly considered all the medical opinions, with the other evidence of record, including Plaintiff's treatment history, the objective medical evidence, the state agency assessments, and her daily activities. (Tr. 10–22). Ultimately, it is up to the ALJ to determine the weight that each opinion is due. *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013). The ALJ performed his duty, which is to weigh the evidence, resolve material conflicts, make independent findings of fact, and determine the case accordingly. The ALJ did that here, and substantial evidence supports the result. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) ("The issue before this court is whether the ALJ's findings were supported by substantial evidence, not whether [Plaintiff] is disabled." . . . [I]f the findings of the Commissioner of Social Security

are supported by substantial evidence, they are conclusive."). Because substantial evidence supports the ALJ's decision that Plaintiff was not disabled, this Court should affirm his decision.

## IV. CONCLUSION

Based on the foregoing, the Court **OVERRULES** Plaintiff's Statement of Errors and **AFFIRMS** the Commissioner's decision.

IT IS SO ORDERED.

Date:  March 29, 2021                                 /s/ Kimberly A. Jolson
                                                      KIMBERLY A. JOLSON
                                                      UNITED STATES MAGISTRATE JUDGE